## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into between Sysco Atlanta, LLC ("Sysco"), on the one hand; and Jerral Madison (the "Named Plaintiff"), on behalf of himself and others he asserts to be similarly situated, on the other hand.

The Named Plaintiff initially filed a collective action *Jerral Madison v. Sysco Atlanta, LLC*, Civil Action No. 1:22-cv-04856-SDG (the "Lawsuit") against Sysco alleging that Sysco failed to pay him, and allegedly similarly situated workers, overtime compensation for all "off-the-clock" hours worked and failed to include incentive pay and retention bonus payments into the regular rate of pay calculation for the purpose of calculating overtime pay and, thus, alleged that he and alleged similarly situated workers are owed alleged overtime pay under the Fair Labor Standards Act ("FLSA") (the "Claims").

Sysco denies the Claims, denies that Sysco owes any alleged overtime to any individual with respect to the Claims, and denies that the Named Plaintiff is similarly situated to any other individuals with respect to the claims.

Sysco and the Named Plaintiff (together, the "Settling Parties") recognize that the outcome of the Claims is uncertain, and the Settling Parties have been and are engaged in a good faith and bona fide dispute regarding "off the clock" work performed, whether any retention bonus payments and incentive pay were properly included or excluded from the calculation of the regular rate of pay, and the amount, if any, of overtime wages owed to any of the "Potential Plaintiffs" (as defined below) under the FLSA.

0 = 1   49270632 v1-Ogletree

While Sysco continues to deny any liability or wrongdoing, Sysco has agreed to resolve the Claims on the terms and conditions set forth in this Agreement in order to avoid the risks and expense associated with continued litigation of the Claims.

This Agreement reflects a compromise and settlement reached after an exchange of relevant documents and information and arms-length negotiations, with all Settling Parties being represented by competent, experienced counsel, and shall not be construed as an admission or concession by any of the Settling Parties as to the truth or validity of any substantive or procedural allegation, claim, or defense.

The Settling Parties agree to take all measures reasonably necessary and appropriate to obtain Court approval of this Agreement in consideration for: (a) payment by Sysco of the consideration expressed in this Agreement subject to the terms, conditions and limitations of this Agreement; (b) the release and dismissal with prejudice of all claims as set forth in this Agreement; and (c) other valuable monetary and non-monetary consideration as set forth in this Agreement. This Agreement is contingent upon approval by the Court and is entered into voluntarily by the Settling Parties for settlement purposes only.

## I.     CONSENT TO COURT-FACILITATED NOTICE

### A.     Potential Plaintiffs

1.     For settlement purposes only, the Settling Parties agree that the Named Plaintiff and the "Putative Collective Members" (as defined below) (collectively, "Potential Plaintiffs") are similarly situated for purposes of 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") to support certification of this matter as a collective action under the FLSA. Sysco consents, therefore, to issuance of Court-facilitated notice to the Potential Plaintiffs. The Potential

Plaintiffs are individuals who Sysco identified as Outbound Selectors at Sysco's Atlanta facility who received one or more retention bonus payments as well as overtime during the same pay period at any time between April 29, 2022, and August 8, 2022 (the "Relevant Period"). Those Potential Plaintiffs, excluding Named Plaintiff, are hereinafter referred to as "Putative Collective Members."

2.      The Settling Parties shall cooperate and present to the Court for its consideration in connection with the approval of the Agreement and Court-facilitated notice such information as may be reasonably requested by the Court for approving/affirming FLSA settlements and/or facilitated notice.

## II.   SETTLEMENT APPROVAL PROCEDURE

Counsel for Named Plaintiff ("Plaintiff's Counsel") shall use their best efforts to file, within five (5) business days after this Agreement is signed by all Settling Parties: (1) the Plaintiff's Unopposed Motion for Approval of Settlement of Collective Action and Dismissal with Prejudice; (2) the agreed-to (proposed) Order on Unopposed Motion for Approval of Settlement of Collective Action and Dismissing Lawsuit With Prejudice; (3) the Notice of Settlement; and (4) the Consent to Join Settlement, Release and Claim Form (the Notice of Settlement and the Consent to Join Settlement, Release and Claim Form are hereinafter collectively referred to as the "Notice Packet," and are attached to this Agreement as *Exhibit A*). The Notice Packet advises the Potential Plaintiffs of the material terms and provisions of this settlement, the procedures for submitting Consent to Join Settlement, Release and Claim Forms, and their rights with respect to this settlement.

In the event the Court does not promptly issue an order approving this settlement, the Settling Parties will request to set the Unopposed Motion for a hearing on the Court's motion calendar, on a date convenient to the Settling Parties.

## III.    MODE, CALCULATION AND TIMING OF PAYMENT OF CLAIMS

### A.    Notice of Claims

1.    Within fourteen (14) days of the entry by the Court of an order approving the settlement as documented in this Agreement and dismissing the Lawsuit with prejudice (the "Approval Order"), Sysco shall provide the Settlement Claims Administrator with an Excel spreadsheet listing the names, and the following information, to the extent such information is in its possession, for each of the Potential Plaintiffs: last known mailing address, last known personal telephone number, the total amount of overtime pay paid out, and last known personal email address(es).  Plaintiff's Counsel shall also provide the Settlement Claims Administrator with any updated addresses for the Potential Plaintiffs that Plaintiff's Counsel may have. Prior to the distribution of the Notice Packet to the Potential Plaintiffs, the Settlement Claims Administrator shall attempt to confirm the accuracy of the addresses through the United States Post Office's National Change of Address database and shall mail the Notice Packet to any updated address obtained therefrom.

2.    Within twenty-one (21) days of the date on which the Court grants the Approval Order and dismisses the Lawsuit with prejudice, the Settlement Claims Administrator shall establish a dedicated secure website accessible to Potential Plaintiffs using a unique personal identifier assigned to them by the Settlement Claims Administrator ("Website"). The home page of the Website shall advise that it is the login page for individuals who have received a notice

advising them that they are eligible to participate in the settlement of a claim made in a lawsuit pending in the United States District Court for the Northern District of Georgia and provide an interactive window in which to type their unique personal identifier. The home page shall reference the parties to the Lawsuit and the Case number, but otherwise will not reference the nature of the claims asserted in the lawsuit. Once a user has successfully entered a valid unique personal identifier, they shall be directed to a Website page with the text of the Notice Packet documents, inclusive of the amount of their Estimated Settlement Award (as defined below) (the "Details Page"). The "Details Page" shall feature fillable text fields for Potential Plaintiffs to type the information needed to complete the Consent to Join Form and Release and a clickable button, which shall remain visible to the user at all times, through which Potential Plaintiffs can submit their Consent to Join Claim Form and Release. Prior to mailing of the Notice Packets, the Settlement Claims Administrator shall provide counsel for the Settling Parties with access to the Website for purposes of review.  Notice shall not issue until both Settling Parties' counsel issue their approval of the Website's appearance and content.

       3.     Within twenty-one (21) days of the Approval Order becoming a final, non-appealable order, the Settlement Claims Administrator shall mail, via First Class U.S. Mail, in one mailing, all Notice Packets to the Potential Plaintiffs, along with an enclosed, postage-paid return envelope. Simultaneous with this mailing, the Settlement Claims Administrator shall also email Notice Packets to the Potential Plaintiffs, a claim form number, and a link to the Website to submit their Claim Form. Also simultaneous with this mailing, the Settlement Claims Administrator shall send a text message notice to Potential Plaintiffs with a link to review their notice and claim form. If any Notice Packet is returned as undeliverable for a Potential Plaintiff, or if the Settlement

Claims Administrator receives a bounce-back or other message indicating any emailed Notice Packet was not delivered to the Potential Plaintiff, the Settlement Claims Administrator shall promptly attempt to locate such Potential Plaintiff up to two times through an electronic search using the identifying and contact information of that person and shall promptly mail, via First Class U.S. Mail, an additional Notice Packet to such person. The Potential Plaintiffs will be provided a summary of the basis for settlement and their respective estimated settlement amount, Named Plaintiff's claims and Sysco's denials and defenses, the decision to participate or not participate in the settlement and how to do so, and told that in order to receive any monetary proceeds of the settlement, the original, properly-executed and completed Consent to Join Settlement, Release and Claim Form must be postmarked or otherwise received by mail, e-mail, Website submission or facsimile by the Settlement Claims Administrator on or before sixty (60) days after the date the Notice Packets were initially mailed and emailed to the Potential Plaintiffs (the "Opt-In Period").

4.      In the event that Plaintiff's Counsel or the Settlement Claims Administrator is contacted by a Potential Plaintiff before the close of the Opt-In Period and the Potential Plaintiff indicates that he or she did not receive the Notice Packet, the Settlement Claims Administrator shall mail and email an additional Notice Packet to the mailing address and email address provided by the Potential Plaintiff. In the event of re-mailing under III(A)(3) or (4) herein to a Potential Plaintiff, the deadline for that Potential Plaintiff returning the original, properly executed or submitted Consent to Join Settlement, Release and Claim Form shall be the longer of the close of the Opt-In Period or thirty (30) days from the date of re-mailing ("Re-mailing Opt-In Period").

5.      In the event any Consent to Join Settlement, Release and Claim Form is timely submitted but does not contain a signature or electronic signature or sufficient information

to identify the Potential Plaintiff, the Settlement Claims Administrator shall provide the Potential Plaintiff with a letter and email requesting the information that was not provided and giving the Potential Plaintiff until the close of the Opt-In Period, any Re-mailing Opt-In Period, or fifteen (15) days to respond, whichever is later ("Cure Period"). Any Potential Plaintiff who fails to respond timely to a cure letter, will not be considered a Qualified Claimant (as defined below).

6.      In the event of any dispute over the late submission of any claims, the Settling Parties will meet and confer in good faith in an effort to resolve the dispute, and if the Settling Parties are unable to reach an agreement, the Settlement Claims Administrator shall decide the dispute, and its decision will be final; however, to the extent a Potential Plaintiff submits a claim within seven (7) days after the later of close of the Opt-In Period, any Re-mailing Opt-In Period and any Cure Period for that Potential Plaintiff, for which the Potential Plaintiff provides a good faith explanation beyond the Potential Plaintiff's control to support the untimely submission, the administrator has discretion to accept the claim as timely.

7.      The Putative Collective Members who timely return a completed and executed Consent to Join Settlement, Release and Claim Forms, along with the Named Plaintiff, will be considered "Qualified Claimants" entitled to receive their finalized share of the Net Fund (as defined in paragraph III(F)(1) below).  Named Plaintiff does not need to submit Claim Forms in light of him signing this Agreement and general release.

8.      Within fourteen (14) days after the later of the close of the Opt-In Period, Re-mailing Opt-In Period and Cure Period, the Settlement Claims Administrator shall provide to Sysco's Counsel and Plaintiff's Counsel a list of Qualified Claimants and shall provide electronic copies of all timely received and completed Consent to Join Settlement, Release and Claim Forms.

9.     At the conclusion of the settlement administration process, the Settlement Claims Administrator shall maintain an electronic copy of all Consent to Join Settlement, Release and Claim Forms received by the Potential Plaintiffs and shall provide the original Consent to Join Settlement, Release and Claim Forms to Sysco's Counsel.

### B.     Sysco's Payment Obligations

1.     Gross Amount.  In consideration for the dismissal with prejudice of the Action as well as the release of claims effected by this Agreement and other good and valuable consideration, Sysco shall pay a maximum of Forty-Seven Thousand Dollars ($47,000.00) (the "Gross Amount") to settle the Lawsuit on a common fund settlement structure. Subject to the terms of this Agreement, the Gross Amount is inclusive of payment for: (a) settlement amounts to all Qualified Claimants, or their respective authorized legal representatives; (b) the General Release Payment (as defined in paragraph III(F)(3) below) approved by the Court for the Named Plaintiff; (c) all attorneys' fees, costs, and litigation expenses approved by the Court; (d) the Settlement fees and costs incurred by the Settlement Claims Administrator with $1,750 being paid directly by Sysco and the remainder (if available) being paid out remaining proceeds of the settlement fund,; and (e) the Qualified Claimants' share of applicable federal, state and local taxes required to be withheld by Sysco. Sysco's payroll tax obligations and/or the employer's share of taxes for settlement payments distributed to Qualified Claimants, as calculated by the Settlement Administrator, shall be paid separately and in addition to the Gross Amount.  Employer payroll taxes aside, the Gross Amount shall be all that Sysco or Released Parties (as defined below) shall pay to settle the Lawsuit and assumes 100% of the Potential Plaintiffs make valid and timely claims and become Qualified Claimants.  Any and all interest or investment income accrued on amounts

paid by Sysco shall revert to Sysco. Further, any unclaimed settlement amounts from the settlement fund shall revert back to Sysco.

**C.**     <u>**Payment**</u>

1.     Within thirty (30) days after the later of (i) the date on which the Court's order approving the Settlement has become a final non-appealable order; or (ii) the date on which the Settlement Claims Administrator provides Sysco wiring instructions and any other information necessary for Sysco to complete a wire transfer of the Gross Amount, Sysco will deposit into the Qualified Settlement Fund the entirety of the Gross Amount approved by the Court ("Funding Date").

2.     Within four (4) days after the Funding Date, the Settlement Claims Administrator shall pay the court-approved attorneys' fees, costs, and litigation expenses to Plaintiff's Counsel via wire transfer and shall transmit the court-approved General Release Payment to the Named Plaintiff by U.S. Priority Mail with tracking.

**D.**     <u>**Settlement Claims Administration**</u>

1.     <u>Selection of Settlement Claims Administrator</u>. The Settlement Claims Administrator shall be selected by Plaintiff's Counsel, subject to Sysco's approval, not to be unreasonably withheld.

2.     <u>Settlement Claims Administrator Responsibilities</u>. The Settlement Claims Administrator shall be responsible for: (a) determining and finalizing the calculations of the individualized Settlement Payments (as defined below) and tax withholding amounts for the Potential Plaintiffs, as applicable; (b) preparing, printing and disseminating to the Potential Plaintiffs the Notice Packet and return envelope by mail and email; (c) copying counsel for all

Settling Parties on material correspondence and promptly notifying Plaintiff's Counsel of any material requests or communications made by any Potential Plaintiff who receives Notice; (d) receiving and reviewing the Consent to Join Settlement, Release and Claim Forms submitted by Potential Plaintiffs to determine eligibility for payment; (e) determining the final Settlement Payment for each Qualified Claimant in accordance with this Agreement; (f) mailing the settlement checks to Qualified Claimants; (g) wiring Plaintiff's Counsel's attorneys' fees, expenses, and costs and mailing General Release Payments and Settlement Payments in accordance with this Agreement and Approval Order; (h) withholding and paying all payroll tax obligations in accordance with this Agreement; (i) issuing W-2 and 1099 Forms for all amounts paid to Qualified Claimants; (j) ascertaining current address and addressee information for each Notice Packet returned as undeliverable or for which it receives notice that an emailed Notice Packet was not delivered; (k) responding to inquiries of the Potential Plaintiffs regarding the terms of settlement and procedures for returning Consent to Join Settlement, Release and Claim Forms; (l) referring to Plaintiff's Counsel all inquiries by the Potential Plaintiffs which the Settlement Claims Administrator cannot resolve and/or which involve matters not within the Settlement Claim Administrator's duties specified herein; (m) responding to inquiries of Named Plaintiff's or Sysco's Counsel; (n) promptly apprising counsel for the Settling Parties of the activities of the Settlement Claims Administrator; (o) maintaining adequate records of its activities, including the date of the mailing of the Notice Packets and receipt of Consent to Join Settlement, Release and Claim Forms, returned mail and other communications and attempted written or electronic communications with the Potential Plaintiffs; (p) confirming in writing to Named Plaintiff's and Sysco's Counsel and the Court (if required by the Court) its completion of the administration of

the settlement and retaining copies of all endorsed settlement checks; (q) timely responding to communications from the Settling Parties or their counsel; (r) issuing reversionary funds to Sysco; (s) calculating and advising Sysco of its payroll tax obligation to be paid in addition to the Gross Amount to satisfy Sysco's payroll tax liability for payments made pursuant to this Agreement; and (t) such other tasks as the Settling Parties mutually agree.

        3.    <u>Reporting by Settlement Claims Administrator</u>. Throughout the period of claims administration, the Settlement Claims Administrator will provide such reports to the Settling Parties upon request by either Settling Party, regarding the status of the distribution of the Notice Packets to Potential Plaintiffs, the claims administration process, the receipt of Consent to Join Settlement, Release and Claim Forms, and distribution of the Settlement Checks or any other aspect of the claims administration process.

        **E.**    **<u>Creation and Implementation of a Qualified Settlement Fund</u>**

        1.    <u>Establishing the Qualified Settlement Fund</u>. Funds paid by Sysco pursuant to this agreement shall be deposited in an account established by the Settlement Claims Administrator (the "Qualified Settlement Fund"), which shall be a "qualified settlement fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, <u>et</u> <u>seq</u>. The Qualified Settlement Fund shall be administered by the Settlement Claims Administrator, subject to the ultimate authority of the Court.

        2.    <u>Administering the Qualified Settlement Fund</u>. The Settlement Claims Administrator shall serve as Trustee of the Qualified Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Qualified Settlement Fund, including the handling of tax-related issues and payments. The Settling Parties shall cooperate to

ensure such treatment and shall not knowingly take a position in any filing or before any tax authority inconsistent with such treatment.

3.      Tax Withholding and Reporting. The Settlement Claims Administrator shall be responsible for withholding and timely remitting and reporting to the appropriate taxing authorities the employee's share of payroll taxes from the wage payments of each Qualified Claimant, and shall be responsible for paying the employer's share of payroll taxes or contributions (*i.e.,* FICA, FUTA, SUTA, and Medicare) relating to the wage payments of each Qualified Claimant (as described in paragraph III(B)(1) above). Sysco shall be responsible for providing to the Settlement Claims Administrator the funds necessary to pay its employer's share of the payroll taxes and contributions, which shall be separate from and in addition to the Gross Amount.  Subject to the Settlement Claims Administrator's obligation to comply with applicable laws, the Settling Parties anticipate that any amounts designated as Service Payments, or liquidated damages shall not be subject to withholding and shall be reported to the IRS on Form 1099.

4.      Indemnification. The written contract with the Settlement Claims Administrator shall provide for the Settlement Claims Administrator to indemnify the Settling Parties for any penalty or interest arising out of an incorrect calculation or late deposit or remittance of the payments set forth above.

5.      Communication with Sysco and Counsel. Sysco, Sysco's Counsel, and Plaintiff's Counsel are authorized to communicate directly with the Settlement Claims Administrator to expedite the settlement administration process.

**F.      Allocation of the Gross Amount**

1.    Net Fund.  The amount approved by the Court and Affirmed by the Court for a General Release Payment; the amount approved by the Court and Affirmed by the Court for attorneys' fees, expenses, and costs; and the amount approved by the Court for the Settlement Claims Administrator fee shall be deducted from the Gross Amount to obtain a "Net Fund."

Allocation of Net Fund.

| Employee ID | Total Share of Settlement | Back Wages Portion | Liquidated Damages Portion | Percent of Total Penalty |
|---|---|---|---|---|
| 10189412 | $5.07 | $2.54 | $2.53 | 0.02% |
| 50008832 | $173.92 | $86.96 | $86.96 | 0.70% |
| 50062648 | $107.59 | $53.80 | $53.79 | 0.43% |
| 50064278 | $495.00 | $247.50 | $247.50 | 1.98% |
| 60061805 | $682.27 | $341.14 | $341.13 | 2.73% |
| 60105149 | $376.83 | $188.42 | $188.41 | 1.51% |
| 60116127 | $672.92 | $336.46 | $336.46 | 2.69% |
| 60116425 | $53.61 | $26.81 | $26.80 | 0.21% |
| 60117314 | $818.24 | $409.12 | $409.12 | 3.27% |
| 60117317 | $467.68 | $233.84 | $233.84 | 1.87% |
| 60118012 | $457.65 | $228.83 | $228.82 | 1.83% |
| 60118019 | $427.47 | $213.74 | $213.73 | 1.71% |
| 60118038 | $601.24 | $300.62 | $300.62 | 2.40% |
| 60118039 | $441.41 | $220.71 | $220.70 | 1.77% |
| 60119306 | $164.54 | $82.27 | $82.27 | 0.66% |
| 60119308 | $399.65 | $199.83 | $199.82 | 1.60% |
| 60119359 | $206.51 | $103.26 | $103.25 | 0.83% |
| 60121571 | $674.27 | $337.14 | $337.13 | 2.70% |
| 60121831 | $363.24 | $181.62 | $181.62 | 1.45% |
| 60121990 | $911.09 | $455.55 | $455.54 | 3.64% |
| 60122733 | $790.34 | $395.17 | $395.17 | 3.16% |
| 60122736 | $672.88 | $336.44 | $336.44 | 2.69% |
| 60122737 | $886.30 | $443.15 | $443.15 | 3.55% |
| 60123045 | $1,136.91 | $568.46 | $568.45 | 4.55% |
| 60123136 | $691.88 | $345.94 | $345.94 | 2.77% |

| | | | | |
|---|---|---|---|---|
| 60123445 | $106.63 | $53.32 | $53.31 | 0.43% |
| 60124207 | $766.32 | $383.16 | $383.16 | 3.07% |
| 60124293 | $756.09 | $378.05 | $378.04 | 3.02% |
| 60124507 | $120.67 | $60.34 | $60.33 | 0.48% |
| 60124746 | $224.35 | $112.18 | $112.17 | 0.90% |
| 60124996 | $218.74 | $109.37 | $109.37 | 0.87% |
| 60125231 | $130.99 | $65.50 | $65.49 | 0.52% |
| 60125282 | $603.25 | $301.63 | $301.62 | 2.41% |
| 60125285 | $442.67 | $221.34 | $221.33 | 1.77% |
| 60125356 | $710.64 | $355.32 | $355.32 | 2.84% |
| 60125371 | $270.22 | $135.11 | $135.11 | 1.08% |
| 60126114 | $7.96 | $3.98 | $3.98 | 0.03% |
| 60126117 | $587.22 | $293.61 | $293.61 | 2.35% |
| 60126164 | $577.03 | $288.52 | $288.51 | 2.31% |
| 60126349 | $237.89 | $118.95 | $118.94 | 0.95% |
| 60126472 | $302.98 | $151.49 | $151.49 | 1.21% |
| 60126714 | $760.26 | $380.13 | $380.13 | 3.04% |
| 60126716 | $563.95 | $281.98 | $281.97 | 2.26% |
| 60126841 | $141.21 | $70.61 | $70.60 | 0.56% |
| 60126871 | $1.87 | $0.94 | $0.93 | 0.01% |
| 60126907 | $63.40 | $31.70 | $31.70 | 0.25% |
| 60127412 | $462.39 | $231.20 | $231.19 | 1.85% |
| 60127818 | $32.99 | $16.50 | $16.49 | 0.13% |
| 60127866 | $27.83 | $13.92 | $13.91 | 0.11% |
| 60127988 | $365.75 | $182.88 | $182.87 | 1.46% |
| 60128337 | $229.50 | $114.75 | $114.75 | 0.92% |
| 60128852 | $174.13 | $87.07 | $87.06 | 0.70% |
| 60128853 | $105.95 | $52.98 | $52.97 | 0.42% |
| 60128854 | $250.85 | $125.43 | $125.42 | 1.00% |
| 60128920 | $102.81 | $51.41 | $51.40 | 0.41% |
| 60128922 | $400.73 | $200.37 | $200.36 | 1.60% |
| 60128987 | $127.48 | $63.74 | $63.74 | 0.51% |
| 60129145 | $58.56 | $29.28 | $29.28 | 0.23% |
| 60129246 | $54.92 | $27.46 | $27.46 | 0.22% |
| 60129251 | $123.56 | $61.78 | $61.78 | 0.49% |
| 60129252 | $89.24 | $44.62 | $44.62 | 0.36% |
| 60129281 | $283.39 | $141.70 | $141.69 | 1.13% |

| | | | | |
|---|---|---|---|---|
| 60129541 | $161.45 | $80.73 | $80.72 | 0.65% |
| 60129542 | $74.87 | $37.44 | $37.43 | 0.30% |
| 60129547 | $33.63 | $16.82 | $16.81 | 0.13% |
| 60129657 | $78.26 | $39.13 | $39.13 | 0.31% |
| 60129866 | $59.93 | $29.97 | $29.96 | 0.24% |
| 60129903 | $109.90 | $54.95 | $54.95 | 0.44% |
| 60129904 | $25.64 | $12.82 | $12.82 | 0.10% |
| 60129905 | $73.17 | $36.59 | $36.58 | 0.29% |
| 60130252 | $33.99 | $17.00 | $16.99 | 0.14% |
| 60130485 | $20.80 | $10.40 | $10.40 | 0.08% |
| 60130555 | $114.47 | $57.24 | $57.23 | 0.46% |
| 60131537 | $66.25 | $33.13 | $33.12 | 0.27% |
| 60131568 | $250.51 | $125.26 | $125.25 | 1.00% |
| 60131570 | $159.55 | $79.78 | $79.77 | 0.64% |
| 60131766 | $74.38 | $37.19 | $37.19 | 0.30% |
| 60133034 | $67.72 | $33.86 | $33.86 | 0.27% |
| 60133209 | $54.61 | $27.31 | $27.30 | 0.22% |
| 60133210 | $0.74 | $0.37 | $0.37 | 0.003% |
| 60133364 | $56.00 | $28.00 | $28.00 | 0.22% |
| 60133495 | $78.84 | $39.42 | $39.42 | 0.32% |
| 60133760 | $32.87 | $16.44 | $16.43 | 0.13% |
| 60134132 | $42.54 | $21.27 | $21.27 | 0.17% |
| 60135216 | $39.81 | $19.91 | $19.90 | 0.16% |
| 60135679 | $40.68 | $20.34 | $20.34 | 0.16% |
| 60135680 | $46.19 | $23.10 | $23.09 | 0.18% |
| 60135681 | $40.27 | $20.14 | $20.13 | 0.16% |
| | | | | |
| | $25,000.00 | $12,500.25 | $12,499.75 | 100.00% |

2.     <u>General Release Payment.</u>  From the Gross Amount, Plaintiff's Counsel shall seek a General Release Payment of Two Thousand Two Hundred Fifty Dollars ($2,250.00) for the Named Plaintiff, primarily in exchange for his release of all claims as to Sysco, and for his involvement in commencing and discovering the claims represented in this Lawsuit and his

involvement in settlement negotiations for the benefit of all Putative Collective Members. Sysco does not dispute that the general release award sought by the Named Plaintiff is reasonable. The settlement is not conditioned upon the Court's approval of the requested General Release Payment. Any General Release Payment approved by the Court shall be deemed non-wage compensation in its entirety and shall be reported to the Named Plaintiff on IRS Form 1099. Any amount of the requested General Release Payments not approved by the Court or Affirmed by the Court shall be included as part of the Net Fund.

        3.    <u>Attorneys' Fees and Costs Amounts</u>.  From the Gross Amount, Plaintiff's Counsel shall seek Eighteen Thousand Dollars ($18,000.00) as an award of attorneys' fees, costs, and litigation expenses. The settlement is not conditioned upon the Court's approval of Plaintiff's Counsel's petition for fees, costs, and litigation expenses. Payment of such attorneys' fees, expenses, and costs to Plaintiff's Counsel from the Gross Amount shall be made in accordance with this Agreement and shall constitute full satisfaction of any and all obligations by Sysco to pay any person, attorney or law firm for attorneys' fees, expenses or costs incurred on behalf of the Named Plaintiff and Qualified Claimants or otherwise in connection with the Lawsuit.  The Settlement Claims Administrator shall report the payment of these fees, expenses, and costs to Plaintiff's Counsel on an IRS Form 1099. Any amount of the attorneys' fees and costs not approved by the Court shall be included as part of the Net Fund.

     **G.**    **<u>Payments to Qualified Claimants</u>**

        1.    <u>Timing of Payments.</u> Within twenty-one (21) days of the later of the close of the Opt-In Period, Re-mailing Opt-In Period and Cure Period, the Settlement Claims Administrator will transmit all Settlement Award payments via check ("Settlement Check") to Qualified

Claimants by First Class U.S. Mail to the last known address for each Qualified Claimant, or such other address provided by the Qualified Claimant to the Settlement Claims Administrator ("Check Issuance Date"). The Settlement Claims Administrator will also send reminder postcards via First Class U.S. Mail and e-mail sixty (60) days after the Check Issuance Date to any Qualified Claimants who, at the time of mailing and e-mailing the reminder postcard, have not negotiated their Settlement Check.

        2.    <u>Tax Treatment of the Settlement Payments.</u>  The Settlement Payments attributed to the Qualified Claimants shall be allocated 50 percent to alleged back wages and 50 percent to alleged liquidated damages. The alleged back wages shall be subject to all required employee-paid payroll taxes (federal income taxes, state income taxes, employee's share of FICA and FUTA taxes, and other state or local-specific statutory deductions) and other authorized or required deductions (garnishments, tax liens, child support, etc.). The alleged liquidated damages shall be treated as non-wage income to the Qualified Claimant. The General Release Payment shall be treated as non-wage income to the Named Plaintiff. The Settlement Claims Administrator shall report the alleged back wage payments to the Internal Revenue Service ("IRS") on IRS Form W-2 and shall report the alleged liquidated damages and General Release Payments on IRS Form 1099.

        3.    <u>Tax Responsibilities, Tax Advice, and Indemnification.</u> Other than the withholding and reporting requirements set forth herein, the Qualified Claimants shall be solely responsible for any necessary reporting of their respective shares of any federal, state, and/or local income or other tax, if any, on the Settlement Payments. Named Plaintiff, on behalf of himself, acknowledges and agrees that he has not relied upon any advice from Sysco, Sysco's counsel, or

Plaintiff's Counsel as to the taxability of the payments received pursuant to this Agreement. As to the payments treated and reported as non-wages, Named Plaintiff agrees to indemnify and hold Sysco and the other Released Parties harmless for any tax due or owing by Named Plaintiff on such payments.

4.       Negotiation of Settlement Checks. Qualified Claimants will have ninety (90) days after the Check Issuance Date in which to negotiate their Settlement Checks ("Check Void Date"). If any Qualified Claimant does not negotiate his or her Settlement Check by the Check Void Date, the check will be void. However, Settlement Checks not cashed by the Check Void Date may be reissued once if the Settling Parties mutually agree or if the Settlement Claims Administrator, prior to the Reversion Date (defined below), determines that there is good cause to do so with respect to any particular Settlement Check(s). If any Qualified Claimant does not negotiate his or her reissued Settlement Check within the Check Void Date or thirty (30) days after reissuance of the settlement check ("Reissued Check Void Date"), whichever is later, the reissued Settlement Check will be void. Any funds remaining in the Qualified Settlement Fund after payment to:  (a) all Qualified Claimants who timely negotiate their Settlement Checks or reissued Settlement Checks; (b) all attorneys' fees, costs, and litigation expenses approved by the Court and affirmed by the Court; (c) all General Release Payments approved by the Court and affirmed by the Court; and (d) the contractual payment to  the Settlement Claims Administrator, shall revert to Sysco, and shall be paid within thirty (30) days after the Check Void Date or Reissued Check Void Date, whichever is later ("Reversion Date").

5.       No Effect on Benefit Plans.  Payments to Qualified Claimants shall not create any credit or any basis to change the calculation of benefits provided under any pension,

retirement, or any other benefit or compensation plan, policy, program, or arrangement. Such payments shall not modify any previously credited hours of service under any employee benefit plan, policy or bonus program sponsored by Sysco, and shall not be applied as salary, earnings, wages, or any other form of compensation for purposes of such plans, policies, or programs.

IV.  **RELEASE**

A.  **Release by Qualified Claimants**

Conditioned upon the entry of the Approval Order, and in exchange for the monetary consideration recited in this Agreement to which the Qualified Claimants were not already entitled, Named Plaintiff hereby agrees to dismiss the Lawsuit with prejudice and each Qualified Claimant agrees to execute a Consent to Join Settlement, Release and Claim Form which shall, on behalf of the Qualified Claimant and his or her respective assigns, heirs, and legal representatives, waive, release, and discharge all wage and hour claims, causes of action, rights, and demands, including any claim for wages, overtime, distributions, compensation, expenses, interest, actual or compensatory damages, penalties (including waiting time penalties and wage statement penalties), interest, liquidated damages, treble damages, punitive damages, attorneys' fees,  costs, and expenses, against the Released Parties (as defined herein), and including without limitation the Claims and all claims asserted in the Lawsuit, which accrued during the time between the Qualified Claimant's date of hire by Sysco and the date of the Approval Order. This release of claims includes without limitation all claims arising from, attributable to, or related to the FLSA and any similar state or local law relating to wages and/or hours worked. As used herein, "Released Parties" shall mean and collectively refer to Sysco and any and all of its predecessors, related companies, successors, subsidiaries, affiliates, owners, indirect and direct parents, partners, and their

respective officers, directors, shareholders, members, owners, partners, administrators, trustees, attorneys, representatives, managers, employees, and agents.

### B. __Release by Named Plaintiff__

The Named Plaintiff, upon receipt of a General Release Payment and in exchange for the monetary consideration recited in this Agreement to which the Named Plaintiff was not already entitled, on behalf of the Named Plaintiff and his respective assigns, heirs, and legal representatives hereby releases, absolves and discharges the Released Parties from any and all known or unknown claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, grievances, vacation payments, severance payments, obligations, commissions, debts, profit sharing claims, expenses, damages, judgments, orders and liabilities of whatever kind or nature under federal, state, or local law, equity or otherwise, which the Named Plaintiff owns or holds or has at any time owned or held as against the Released Parties arising out of the Named Plaintiff's employment with, termination from, or association with any of the Released Parties or otherwise relating in any way to any acts, circumstances, facts, transactions, omissions, or other subject matters, based on facts occurring prior to the date the Named Plaintiff signs this Agreement. This release includes, but is not limited to, (a) the Claims and all claims made or which could have been made in the Lawsuit; (b) any and all claims arising under Title VII, the Civil Rights Act of 1866, the Age Discrimination in Employment Act of 1967 (ADEA), the Older Workers Benefit Protection Act (OWBPA), the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), the Employee Retirement Income Security Act (ERISA), Section 1981, and any other matter and/or action under federal, state, or local laws or the common law; and (c) any claims and causes of action of whatever kind or character, in tort or contract, statutory or otherwise,

for legal or equitable relief. Without limiting the foregoing, the Named Plaintiff's release includes a release of all wage and hour claims, causes of action, rights, and demands, including any claim for wages, overtime, distributions, compensation, expenses, interest, actual or compensatory damages, penalties (including waiting time penalties and wage statement penalties), interest, liquidated damages, treble damages, punitive damages, attorneys' fees,  costs, and expenses, against the Released Parties, including such claims arising from, attributable to, or related to the FLSA and any similar state or local law relating to wages and/or hours worked.  Excluded from the release, however, are any claims that cannot be waived by law, including the right to file a charge with or participate in an investigation conducted by any federal, state, or local government agency (but not the right to any monetary recovery or other relief should any agency pursue a claim on their behalf).

### C.  Covenant Not to Sue

The Named Plaintiff and Qualified Claimants agree that they will not voluntarily pursue, promote, assist, or participate in any other claims, demands, charges, complaints, causes of action, or suits whatsoever against the Released Parties within the scope of the applicable release described above, unless compelled to do so by court order, duly authorized subpoena, or order of a valid governmental authority.  Nothing herein limits Named Plaintiff's and Qualified Claimants' ability to communicate with any government agencies or otherwise participate in any investigation or proceeding that may be conducted by any government agency, including providing documents or other information, without notice to the Released Parties. This Agreement does not limit Named Plaintiff's or Qualified Claimants' right to receive an award from a government agency for information provided to such government agency. However, with respect to claims released in this

Agreement, Named Plaintiff and Qualified Claimants have waived any right to recover any monetary damages or other personal relief, where such rights can be lawfully waived, from the Released Parties in any action filed by Named Plaintiff, Qualified Claimants, or by anyone else on their behalf.

## V.    <u>NOTICES</u>

All notices, requests, demands and other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be delivered personally, by e-mail, or mailed, postage prepaid, by First Class U.S. Mail to the undersigned persons at their respective addresses as set forth herein:

Counsel for Named Plaintiff:          Eric Sands, Esq.
                                      111 Town Square, Suite 400
                                      Jersey City, NJ 07310
                                      Telephone: (877) 561-0000
                                      Facsimile: (855) 582-5297
                                      flsagroup@jbtlawgroup.com

Counsel for Sysco:                    Mitch A. Robinson, Esq.
                                      BakerHostetler LLP
                                      1170 Peachtree Street NE, Suite 2400
                                      Atlanta, Georgia 30309-7676
                                      Telephone: (404)459-0050
                                      Facsimile: (404)459-5734
                                      E-mail: marobinson@bakerlaw.com

## VI.    <u>REPRESENTATION BY COUNSEL</u>

All of the Settling Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Agreement and that this Agreement has been executed with the consent and advice of counsel.

**VII.**   **NO ADMISSION OF LIABILITY**

Sysco enters into this Agreement to avoid further expense and disruption to its business. The Settling Parties acknowledge and agree that liability for the actions that are the subject matter of this Agreement and the amount of any damages if liability were to be established are disputed by Sysco. This Agreement and the settlement are a compromise and shall not be construed as an admission of liability at any time or for any purpose, under any circumstances, by the Settling Parties to this Agreement. The Settling Parties further acknowledge and agree that this Agreement and the settlement shall not be used to suggest an admission of liability in any dispute the Settling Parties may have now or in the future with respect to any person or entity. Neither this Agreement nor anything herein, nor any part of the negotiations had in connection herewith, shall constitute evidence with respect to any issue or dispute other than for purposes of enforcing this Agreement.

Sysco specifically and generally denies any and all liability or wrongdoing of any sort with regard to the Claims and makes no concessions or admissions of liability of any sort. Neither this Agreement nor any act performed or document executed pursuant to, or in furtherance of, this Agreement is or may be deemed to be or may be used as an admission of, or evidence of, the validity of the Claims or any other alleged wrongdoing or liability of Sysco or the Released Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal for any reason.

**VIII.**   **CONFIDENTIALITY AND NONDISPARAGEMENT**

Named Plaintiff and Named Plaintiff's Counsel agree that any and all negotiations pertaining to this Agreement shall be strictly confidential as permitted by law. Accordingly, Named Plaintiff and Named Plaintiff's Counsel agree not to disclose any information concerning

negotiations related to the underlying settlement to any person or entity, except to their respective spouses, legal representatives, and accountants or tax advisors or where such disclosure is required or permitted by law or that is necessary to comply with the terms of this Agreement.

Nothing herein is intended to frustrate the spirt and rights set forth under the FLSA. *See Gamble v. Air Serv Corp.*, 247 F. Supp. 3d 1302, 1305-1306. After the filing of the Approval Motion, if a Potential Plaintiff contacts Named Plaintiff's Counsel of Named Plaintiff directly, Named Plaintiff's Counsel or Named Plaintiff may discuss with such Potential Plaintiff the terms of the settlement.

Named Plaintiff agrees that he shall not make any negative or disparaging comments, whether verbally or in writing, about Defendant (including, but not limited to, its predecessors, parents, subsidiaries, affiliated organizations, and their respective successors and assigns together with their respective owners, directors, officers, employees, agents, attorneys, representatives, shareholders, and their respective heirs and personal representatives) to any person or entity.

Nothing in this Agreement prevents Employee from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the National Labor Relations Board ("NLRB"); from assisting coworkers or former coworkers with workplace issues concerning their employer; from communicating with others, including a union and the NLRB, about their employment, or from exercising any other rights under Section 7 of the National Labor Relations Act ("NLRA").  In addition, nothing in this Agreement prevents Employee from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC or any other any federal, state or local agency charged with the enforcement of any employment laws. Employee is waiving Employee's right to individual relief based on claims

asserted in such a charge or complaint, except where such a waiver of individual relief is prohibited. Employee is hereby releasing and forever waiving any private right to sue, and any associated applicable remedies, which may be issued by any state or federal agency.

## IX.   MODIFICATION OF AGREEMENT

This Agreement may not be modified or amended except in writing, signed by the affected Settling Parties or the respective counsel of record for the Settling Parties and as approved by the Court.

## X.   CONSTRUCTION AND INTERPRETATION

### A.   Entire Agreement

This Agreement, along with the exhibits hereto, constitutes the entire agreement between the Settling Parties with respect to the subject matter contained herein and shall supersede all prior and contemporaneous negotiations between the parties. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement, or any specific term or condition thereof.  The Named Plaintiff and Sysco participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel. As such, neither the Named Plaintiff nor Sysco may claim that any ambiguity in this Agreement should be construed against the other.

### B.   No Reliance on Representations or Extrinsic Evidence

Except as expressly provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary, or contradict its terms. In entering into this Agreement,

the Settling Parties agree that this Agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence.

        C.      **Controlling Law**

Except as set forth herein, this Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Georgia, both in its procedural and substantive aspects, and without regard for the principle of conflict of laws, other than to the extent that the laws of the United States govern any matter set forth herein, to which federal law shall govern.

        D.      **No Assignment**

Plaintiff's Counsel and the Named Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action.

        E.      **Severability**

If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, except the Release, the remaining portions of this Agreement will remain in full force and effect to the extent that the effect of the Agreement remains materially the same and the obligations of the Settling Parties remain materially the same.

## XI.   **COUNTERPARTS**

This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which shall be deemed an original of this Agreement. All

counterparts of any such document together shall constitute one and the same instrument. A photocopy, facsimile, or digital image of an executed counterpart shall be enforceable and admissible as an original.

## XII.   <u>BINDING EFFECT</u>

This Agreement is binding upon and shall inure to the benefit of the Settling Parties to this Agreement. Without limiting the foregoing, this Agreement specifically shall inure to the benefit of Sysco as well as its present and former owners, stockholders, predecessors, successors, joint ventures, assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, parents, subsidiaries, benefit plans, plan fiduciaries, affiliated divisions and companies, and all persons acting by, through, under or in concert with any of them. Also, without limiting the foregoing, this Agreement shall be binding upon the spouses, children, heirs, assigns, administrators, executors, beneficiaries, conservators, successors, attorneys, and offspring of all Qualified Claimants.

## XIII.   <u>ATTORNEY FEES, COSTS AND EXPENSES</u>

Except as otherwise specifically provided herein, the Settling Parties and all Qualified Claimants shall bear responsibility for their own attorneys' fees, costs and expenses, taxable or otherwise, incurred by them or arising out of or related to this Action, or the negotiation of this Settlement, and shall not seek reimbursement thereof from any party to this Agreement.  However, in the event of any dispute brought in Court to enforce the terms of this Agreement, the prevailing party shall be entitled to an award of their reasonable attorneys' fees and costs from the non-prevailing party.

## XIV.   AUTHORITY OF COUNSEL

### A.   Facsimile, Electronic and E-mail Signatures

Any Settling Party may execute this Agreement by signing or by causing its counsel to sign on the designated signature block below, including by electronic means, and transmitting that signature page via facsimile, e-mail, or other electronic means to counsel for the other Settling Party. Any signature made and transmitted by facsimile, e-mail, or other electronic means for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Settling Party whose counsel transmits the signature page by facsimile, e-mail, or other electronic means.

### B.   Voluntary Signature

All Settling Parties agree that they have signed this Agreement or authorized their counsel to sign this Agreement on their behalf, knowingly, voluntarily, with full knowledge of its significance, and without coercion.

### C.   Warranty of Counsel

Plaintiff's Counsel warrant and represent that they are expressly authorized by the Named Plaintiff to take all appropriate action required or permitted to be taken pursuant to this Agreement to effectuate its terms. Counsel for Sysco warrant and represent that they are authorized to take all appropriate action required or permitted to be taken by Sysco pursuant to this Agreement to effectuate its terms.

## XV.   CONTINUING JURISDICTION

This Agreement is subject to the continuing jurisdiction of the Court to retain continuing jurisdiction to construe, interpret and enforce the provisions of this Agreement; to supervise the

administration and distribution of the resulting settlement funds; and to hear and adjudicate any dispute or litigation arising from or related to this Agreement or the issues of law and facts asserted in the Litigation. The parties agree to jurisdiction in the United States District Court for the Northern District of Georgia for purposes of the Action and approving this Agreement and enforcing its terms.

## XVI.   EFFECT OF NON-APPROVAL

In the event that the Agreement is not approved by the Court for any reason in the form submitted by the Settling Parties, the Settling Parties will attempt to address any concerns raised by the Court and resubmit a revised settlement agreement if possible. If the Settling Parties cannot agree on a revised settlement agreement or if the Court denies the approval of a renegotiated settlement agreement, this Agreement or the renegotiated agreement shall be terminated as of the date the Court's order denying approval of the Agreement or renegotiated agreement was entered. Upon termination of this Agreement or any renegotiated agreement:  (A) this Agreement and, if applicable, the renegotiated agreement shall have no force or effect and no Settling Party shall be bound by any of its terms, and any documents executed or filed in connection with this Agreement shall be inadmissible in evidence and shall have no preclusive or other effect; (B) the stipulation that the Putative Collective Members are similarly situated to the Named Plaintiff under 29 U.S.C. § 216(b) and any other law and the releases given shall be null and void, and it shall be inadmissible in evidence and shall have no preclusive or other effect; (C) Sysco shall retain the right to contest whether the case should be maintained as a collective action, and to contest the merits of the claims being asserted in the case; and (D) nothing in this Agreement shall be used or construed by or against any party as a determination, admission, or concession of any issue of law or fact in the

Lawsuit or any other dispute; and the Settling Parties do not waive, and instead expressly reserve, their respective rights with respect to the prosecution and defense of the Lawsuit and any other dispute.

| | |
|---|---|
| DATED: _____ | Sean Hyslop<br>Sysco Atlanta, LLC<br><br>By: _____ |
| DATED: 01 / 05 / 2024 | Jerral Madison<br><br>By: _Jerral R. Madison_____ |

Lawsuit or any other dispute; and the Settling Parties do not waive, and instead expressly reserve, their respective rights with respect to the prosecution and defense of the Lawsuit and any other dispute.

| DATED: 1/4/2024 | 7:27 AM EST | Sean Hyslop |
| | Sysco Atlanta, LLC |
| | By: _Sean Hyslop_ |
| | DocuSigned by: |
| | AE0E835360CB461... |

| DATED: _____ | Jerral Madison |
| | By: _____ |